993 F.2d 1548
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Joy WOODFOLK; Gregory Rhodes; and Andrew Valentino
Richardson, Defendants-Appellants.
 Nos. 92-1302, 92-1469 and 92-1325.
 United States Court of Appeals, Sixth Circuit.
 May 5, 1993.
 
 Before NORRIS and SILER, Circuit Judges and WEBER, District Judge.*
 PER CURIAM.
 
 
 1
 Defendants Joy Woodfolk, Gregory Rhodes, and Andrew Valentino Richardson appeal various aspects of their guilty pleas and sentencing for conspiracy to possess and distribute cocaine. For the following reasons, we dismiss Woodfolk's appeal and affirm the district court's judgments concerning Rhodes and Richardson.
 
 FACTS
 
 2
 On February 25, 1991, defendants-appellants were indicted by a federal grand jury in Detroit along with fourteen codefendants for various drug-related offenses, including conspiracy to possess with intent to distribute and distribution of cocaine and cocaine base (crack). Defendants allegedly played various roles in facilitating narcotics trafficking between the Eastern District of Michigan and the Western District of North Carolina.
 
 1. Joy Woodfolk
 
 3
 On November 15, 1991, Woodfolk pleaded guilty to money laundering and conspiracy in violation of 18 U.S.C. §§ 1956 and 371, and was sentenced on February 14, 1992, to fifty-two months in prison.
 
 2. Gregory Rhodes
 
 4
 On November 13, 1991, Rhodes pleaded guilty to conspiracy to possess with intent to distribute and to distribute cocaine and cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. At Rhodes' plea hearing, the district judge asked, among other things, whether Rhodes understood that the sentence facing him ranged from ten years to life, whether he was satisfied with his attorney, and whether he understood his rights and the fact that he was waiving them. Rhodes admitted that he had "purchased and sold cocaine for profit in the City of Detroit." The district judge accepted Rhodes' plea and plea agreement, and scheduled his sentencing hearing for February 28, 1992.
 
 
 5
 Between the plea hearing and the sentencing hearing, however, the trials of four of Rhodes' codefendants who had not pleaded guilty resulted in mistrials after the juries failed to reach unanimous verdicts.
 
 
 6
 At Rhodes' sentencing hearing, his defense counsel, Mr. Crawford, sought an adjournment and made a motion to withdraw Rhodes' plea. At a subsequent hearing, Crawford explained the reason for the motion in this colloquy with the court:
 
 
 7
 [Crawford:] ... the defendant constantly, I constantly heard from the defendant, he constantly had my ear, that he didn't believe he could go through with this guilty plea process.
 
 
 8
 I knew that. And for whatever reasons, there tended to be some hesitance on my part in immediately filing a motion with the court to withdraw that. But he never, wholeheartedly, I think that's included--
 
 
 9
 THE COURT: He did wholeheartedly. This is a mature man. He stood here under oath in this court.
 
 
 10
 * * *
 
 
 11
 * * *
 
 
 12
 MR. CRAWFORD: He verbally consented to plead guilty before this court.
 
 
 13
 I'm saying that there are psychological things that go on in a person's mind. At the same time that they might annunciate [sic] something verbally, that may not give the same effect as an acceptance. And this is what I'm saying here to the court.
 
 
 14
 Psychologically, this gentleman never addressed himself to plead guilty before this court and accept the ramifications of that guilty plea.
 
 
 15
 The court denied Rhodes' motion, finding that it arose from his dissatisfaction with the bargain, not any genuine assertion of innocence. As a career offender, Rhodes was sentenced to 292 months' imprisonment.
 
 3. Andrew Valentino Richardson
 
 16
 On November 15, 1991, Richardson pleaded guilty to drug conspiracy in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A), and use of a weapon during drug trafficking in violation of 18 U.S.C. § 924(c). The court sentenced Richardson to fifteen years' imprisonment. During the sentencing hearing, the court rejected Richardson's request to rule on a two-point reduction under the Sentencing Guidelines for his being a minor participant in the conspiracy, noting that he was already subject to a 120-month statutory minimum sentence.
 
 ANALYSIS
 1. Joy Woodfolk
 
 17
 Woodfolk's sentence was imposed on February 14, 1992, and the judgment was docketed February 20. Woodfolk did not file a notice of appeal until March 10, 1992--well past the ten-day filing requirement of Fed.R.App.P. 4(b). No extension of the filing deadline was sought on the ground of excusable neglect, as authorized by Rule 4(b). As a result, this court lacks jurisdiction to hear her appeal, and it is therefore dismissed. United States v. Hatfield, 815 F.2d 1068, 1073-74 (6th Cir.1987).
 
 2. Gregory Rhodes
 
 18
 Rhodes appeals the district court's denial of his motion to withdraw his guilty plea, arguing that he did not voluntarily plead guilty because he believed he was innocent and wanted to assert his innocence, but did not do so because of the poor advice and dilatoriness of his counsel.
 
 
 19
 The right to withdraw a plea prior to sentencing is not absolute, but is left to the broad discretion of the trial court. United States v. Spencer, 836 F.2d 236, 238 (6th Cir.1987). The decision of the district court to deny a motion for plea withdrawal should be sustained unless the district court has abused that discretion. Id.
 
 
 20
 Fed.R.Crim.P. 32(d) provides that "[i]f a motion for withdrawal of a plea of guilty or nolo contendere is made before sentence is imposed, the court may permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." It is well-settled that the defendant has the burden of establishing that his motion to withdraw his plea should be granted. United States v. Triplett, 828 F.2d 1195, 1197 (6th Cir.1987).
 
 
 21
 In Spencer, this court identified five factors to examine when assessing the reasons advanced by a defendant for withdrawing a plea: (1) length of time between the entry of the plea and the motion to withdraw it; (2) why the grounds for withdrawal were not presented to the court earlier; (3) whether the defendant has asserted and maintained his innocence; (4) the circumstances underlying the entry of the plea, the nature and background of the defendant, and whether he has admitted guilt; and (5) potential prejudice to the government. Spencer, 836 F.2d at 238-40.
 
 
 22
 Applying these factors, it becomes clear that the district court did not abuse its discretion in finding that Rhodes had failed to demonstrate any fair and just reason for withdrawing his plea nearly four months after entering it.
 
 
 23
 Courts look with favor on motions to withdraw made soon after the initial pleading, since a " 'swift change of heart is itself strong indication that the plea was entered in haste and confusion.' " Id. at 238 (quoting United States v. Barker, 514 F.2d 208, 222 (D.C.Cir.), cert. denied, 421 U.S. 1013 (1975). Longer delays, however, must be scrutinized more carefully, Triplett, 828 F.2d at 1197, since the purpose of Rule 32(d) " 'is not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty.' " Spencer, 836 F.2d at 239 (quoting United States v. Carr, 740 F.2d 339, 345 (5th Cir.1984), cert. denied, 471 U.S. 1004 (1985)).
 
 
 24
 In this case, Rhodes waited nearly four months--literally, to the scheduled day of sentencing--before suggesting to the court that he might wish to withdraw the plea. This far exceeds lengths of time that this court has found to be excessive. E.g., Spencer, 836 F.2d at 239 (five weeks); Triplett, 828 F.2d at 1198 (eighty-four days). See also United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir.1991) (delay of almost five months is "certainly beyond the bounds of the time frame ordinarily considered appropriate for motions to vacate"), cert. denied, 112 S.Ct. 1231 (1992).
 
 
 25
 Second, Rhodes attributes the long delay to a vague claim of dilatoriness by his counsel and asks for an evidentiary hearing because the delay is unexplained by the record. However, the record does offer a more plausible explanation for Rhodes' late change of heart--namely, that after he saw some of his coconspirators obtain mistrials, he believed a better tactical position could be obtained by withdrawing his plea.
 
 
 26
 As to the third Spencer factor, defense counsel never claimed that Rhodes had asserted his innocence, but merely maintained that he "didn't believe he could go through with this guilty plea process." Rhodes concedes that he did not communicate his belief in his innocence to the court during his plea hearing. Indeed, the presentence report originally recommended that Rhodes receive a two-point reduction in the offense level for acceptance of responsibility because he had admitted his involvement in the distribution of crack.
 
 
 27
 Moving to the fourth point of the Spencer analysis, Rhodes admitted his guilt under oath at his plea hearing, and a careful review of the hearing transcript reveals no reasons why this plea should be suspect. Thus, without considering the fifth factor of prejudice to the government, the Spencer criteria confirm the district court's judgment that Rhodes' motion to withdraw his guilty plea "is not based, really, on any conviction that he is, in fact, innocent and wants a trial," but simply that he is no longer satisfied with the bargain struck. See Triplett, 828 F.2d at 1198 (if defendant does not show fair and just reason for withdrawal, government need not make showing of prejudice). This is not a proper reason for withdrawing a guilty plea. Spencer, 836 F.2d at 239. Accordingly, the district court did not abuse its discretion in denying Rhodes' motion to withdraw his guilty plea.
 
 3. Andrew Richardson
 
 28
 Richardson first contends that the district judge did not satisfy the requirement of Fed.R.Crim.P. 11(c)(1) that she determine at the plea hearing whether Richardson understood the "nature of the charge to which the plea is offered." Fed.R.Crim.P. 11(c)(1).
 
 
 29
 This court reviews the district court's sentencing procedure for substantial compliance with Rule 11, and will vacate a plea only when substantial rights of the defendant have been affected. United States v. Stead, 746 F.2d 355, 356-57 (6th Cir.1984), cert. denied, 470 U.S. 1030 (1985); Fed.R.Crim.P. 11(h).
 
 
 30
 In United States v. Edgecomb, 910 F.2d 1309 (6th Cir.1990), this court held that the charge of drug conspiracy was "simple enough for a lay person to understand" such that " 'a reading of the indictment, or even a summary of the charges in the indictment and an admission by the defendant, is sufficient to establish a factual basis under Rule 11.' " Id. at 1313 (quoting United States v. Van Buren, 804 F.2d 888, 892 (6th Cir.1986)).
 
 
 31
 The transcript of the plea hearing shows that the district court satisfied these requirements. Thus, Richardson's substantial rights were not violated, and his plea should not be vacated.
 
 
 32
 Richardson also argues that the district court erred by not making specific factual findings on the quantity of drugs attributable to him, or on his role in the drug conspiracy. This claim is meritless because these factors were irrelevant to Richardson's sentence under the circumstances of this case.
 
 
 33
 Richardson pleaded guilty to a drug conspiracy charge that carried a ten-year statutory minimum term under 21 U.S.C. § 841(b), and to a charge of using a firearm during drug trafficking, which carries a mandatory five-year consecutive term of imprisonment under 18 U.S.C. § 924(c). Richardson was therefore required by statute to serve at least 120 months for the drug offense. It is undisputed that without the statutory minimums, he would have been subject to a guidelines sentence ranging from 97-121 months.
 
 
 34
 Sentencing Guidelines § 5G1.1(b) provides that "[w]here a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."
 
 
 35
 Neither the quantity of Richardson's drugs nor his role in the conspiracy could reduce his sentence, since any reduction of his guidelines range below 120 months would make the statutory minimum of 120 months "greater than the maximum of the applicable guideline range." U.S.S.G. § 5G1.1(b). Therefore, although Richardson disputed his role in the drug conspiracy and the quantity of drugs attributable to him, the district court was not required to make a finding on these matters. Fed.R.Crim.P. 32(c)(3)(D); United States v. Asuncion, 973 F.2d 769, 773 (9th Cir.1992).
 
 
 36
 For the foregoing reasons, Woodfolk's appeal is dismissed, and the judgments of conviction and sentencing in Rhodes' and Richardson's causes are affirmed.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation