NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1146n.06

No. 11-5397

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| JACK EUGENE HAMPTON, | ) | KENTUCKY |
| | ) | |
| Defendant-Appellant. | ) | |

Before: MARTIN and WHITE, Circuit Judges; ECONOMUS, District Judge.*

PER CURIAM. Jack Eugene Hampton appeals from a district court's order denying his motion to suppress evidence seized during a search of his home.

Between March 15, 2009, and March 19, 2009, German law enforcement officers accessed an international peer-to-peer internet file-sharing network and determined that an individual who was using the internet protocol (IP) address 74.138.19.151 was offering to share an image depicting child pornography. The German officers forwarded this information to the United States Department of Immigration and Customs Enforcement (ICE). An internet service provider later confirmed to ICE agents that this particular IP address was assigned to Hampton, who resided at a third street address in Louisville, Kentucky.

Over ten months later, on January 22, 2010, Special Agent Brady Oberholtzer, an agent with ICE, drafted a search warrant and supporting affidavit seeking authority to search Hampton's

---

*The Honorable Peter C. Economus, United States Senior District Judge for the Northern District of Ohio, sitting by designation.

residence and computer for child pornography. In the affidavit, Oberholtzer explained how law enforcement officers had determined that Hampton had offered child pornography from his computer, and he described the likelihood that child pornography trafficked via computer would be saved and stored by computer users. Oberholtzer also described his investigation to confirm that Hampton continued to reside at the address in question. In addition to providing detailed information about his personal investigation of Hampton, Oberholtzer's affidavit also explained that Hampton had earlier been identified by German law enforcement officers "as a subscriber of an internet account that was used to disseminate visual depictions of children engaged in sexually explicit conduct on January 30, 2008 and on May 19, 2008." A magistrate judge issued the search warrant, which was executed several days later. Many items were seized, including two computers and a hard drive.

Hampton was subsequently charged with receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2), and with possessing child pornography in violation of 18 U.S.C. § 2252(a)(4)(B). Hampton moved to suppress the evidence seized during the search of his home. A magistrate judge reviewed the matter and recommended that Hampton's motion be denied. Over Hampton's objections, the district court denied Hampton's motion based on the magistrate judge's recommendation. Hampton then pleaded guilty to both charges, reserving the right to appeal the district court's denial of his suppression motion.

On appeal, Hampton contends that the search warrant was not supported by probable cause for three reasons: it contained information that was stale, it contained unsupported allegations, and it contained general boilerplate recitations that were not specific to Hampton.

When reviewing the denial of a motion to suppress, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. McCraney*, 674 F.3d 614, 616 (6th Cir. 2012). Probable cause must exist for the issuance of a warrant. *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010). A magistrate judge must "make a practical, common-

sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Hampton argues that the information in Oberholtzer's affidavit was stale because the warrant was executed more than ten months after German law enforcement officers observed child pornography shared through his IP address. We disagree.

"[S]tale information cannot be used in a probable cause determination." *United States v. Frechette*, 583 F.3d 374, 377 (6th Cir. 2009). Whether information in an affidavit is stale depends, in part, on "the inherent nature of the crime." *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998) (citation omitted). "[C]hild pornography is not a fleeting crime" and "is generally carried out in the secrecy of the home and over a long period." *Frechette*, 583 F.3d at 378 (citation and internal quotation marks omitted). Collectors of child pornography "value their sexually explicit materials highly, rarely if ever dispose of such material, and store it for long periods in a secure place, typically in their homes." *United States v. Richardson*, 607 F.3d 357, 370 (4th Cir.) (citation and internal quotation marks omitted), *cert. denied*, 131 S. Ct. 427 (2010). Child pornography stored on a computer "can have an infinite life span" because files containing child pornography "can be easily duplicated and kept indefinitely even if they are sold or traded." *Frechette*, 583 F.3d at 379. Moreover, child pornography can still be discovered on a computer's hard drive even after those images have been deleted. *United States v. Terry*, 522 F.3d 645, 650 n.2 (6th Cir. 2008).

Oberholtzer's affidavit details the exhaustive manner by which he verified that Hampton continued to reside at the third street address at the time of the warrant application. Given the nature of child pornography and our prior decisions upholding search warrants despite similar delays, the ten-month delay in obtaining a search warrant for Hampton's residence did not cause the information to become stale by the time that Oberholtzer requested the search warrant. *See, e.g.*, *United States v. Lewis*, 605 F.3d 395, 402 (6th Cir. 2010) (more than seven months); *Frechette*, 583 F.3d at

378–79 (sixteen months); *United States v. Lapsins*, 570 F.3d 758, 767 (6th Cir. 2009) (nine months); *United States v. Paull*, 551 F.3d 516, 522 (6th Cir. 2009) (thirteen months).

Hampton next contends that there was no factual basis for the allegations contained within the warrant regarding earlier instances of Hampton's association with child pornography and, therefore, that this information could not provide probable cause to search his residence. We disagree.

The supporting affidavit must contain adequate facts about the underlying circumstances to show that probable cause exists. However, "[t]hese supporting facts need not be based on the direct knowledge and observations of the affiant, but may also come from hearsay information." *United States v. Weaver*, 99 F.3d 1372, 1377 (6th Cir. 1996) (citing *Jones v. United States*, 362 U.S. 257, 269–70 (1960)). In general, "another law enforcement officer is a reliable source and . . . consequently no special showing of reliability need be made as a part of the probable cause determination." *Lapsins*, 570 F.3d at 764 (citation and internal quotation marks omitted).

Oberholtzer claimed to have information regarding an earlier investigation that connected Hampton with the possession of child pornography on two earlier occasions in 2008. This information was obtained through German law enforcement officers, who had forwarded the information to ICE. The issuing magistrate judge could find this source to be reliable. While the statements within the affidavit regarding the earlier investigation are hearsay, this does not require the court to ignore the information.

Finally, Hampton contends that the boilerplate information describing the typical behavior of collectors of child pornography could not support a finding of probable cause. Again, we disagree.

Child pornography materials "are illegal to distribute and possess, initial collection is difficult. Having succeeded in obtaining images, collectors are unlikely to destroy them. . . . This proposition is not novel in either state or federal court: pedophiles, preferential child molesters, and

child pornography collectors maintain their materials for significant periods of time." *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005) (quoting *United States v. Lamb*, 945 F. Supp. 441, 460 (N.D.N.Y. 1996)). Hampton objects to use of this profile to assume that he would have retained child pornography for a long period of time. However, Hampton's argument regarding the collector profile is contrary to case law. *See, e.g.*, *United States v. Lemon*, 590 F.3d 612, 615 (8th Cir. 2010); *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir. 2006); *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006); *Riccardi*, 405 F.3d at 861.

The information contained within the supporting affidavit provided sufficient probable cause to believe that Hampton possessed child pornography. Although Hampton was discovered with the image of child pornography more than ten months before the warrant application was filed, "this time gap fits within the range supported by our precedent and that of our sister circuits." *Lewis*, 605 F.3d at 402. Nothing suggests that Hampton's case was any different from the typical child pornography case. Because the warrant application was supported by probable cause, the district court's denial of Hampton's motion to suppress is not reversible error.

The district court's judgment is affirmed.